IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MANUEL E. CANCEL PEÑA,

    Plaintiff,

    v.

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,[1]

    Defendant.

CIVIL NO. 16-1201 (CVR)

## OPINION AND ORDER

## INTRODUCTION

On February 4, 2016, Plaintiff Manuel Cancel Peña ("Plaintiff" or "Claimant") filed this action to obtain judicial review of the final decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security ("Commissioner" or "Defendant"), who denied his application for disability benefits (Docket No. 1).[1] On February 5, 2016, Plaintiff consented to the jurisdiction of a Magistrate Judge for all further proceedings, including the entry of judgment, and the case was therefore referred to the undersigned. (Docket Nos. 5, 7 and 8).[2] On June 20 15, 2016, the Commissioner answered the Complaint and filed a copy of the administrative record. (Docket Nos. 12 and 13). On

---

[1] At the time this suit was filed, Carolyn W. Colvin was Acting Commissioner of Social Security. On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of said agency. Acting Commissioner Berryhill is thus automatically substituted as a Defendant in this case. See Fed. R. Civ. P. 25(d).

[1] 42 U.S.C. Sec. 405(g), provides for judicial review of the final decision of the Commissioner. "... [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment without remanding the cause for rehearing". Section 205(g).

[2] The government has already provided a general consent to proceed before a Magistrate Judge in all Social Security cases. Title 28 U.S.C. Section 636(b)(1)(A), (c)(1) and (c)(2); Fed.R.Civil P. 73(a).

October 27, 2016, Plaintiff filed his memorandum of law (Docket No. 22) and on November 2, 2016, the Commissioner filed her memorandum of law. (Docket No. 23). After careful review of the entire record, the Court REMANDS the present case for further proceedings consistent with this opinion.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

Plaintiff, a former sales representative, filed an application for disability benefits with an alleged onset date of disability of October 15, 2010. The application was initially denied, as was the reconsideration. (Tr. pp. 115-120, 121-124). Plaintiff then requested an administrative hearing, which was held on May 16, 2014, where Plaintiff was represented by counsel and offered testimony regarding his alleged disabilities. (Tr. pp. 50-92). During the hearing, a Medical Expert testified regarding Plaintiff's condition and ailments, and a Vocational Expert also testified regarding possible jobs that Plaintiff could perform in the national economy. On August 26, 2014, the presiding Administrative Law Judge ("ALJ") issued an opinion, finding Plaintiff was not disabled from the onset date through his last insured date. (Tr. pp. 30-42). The ALJ made the following findings of fact in his decision:

1. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015.
2. Plaintiff did not engage in any substantial gainful activity since October 15, 2010, the alleged onset date.
3. Plaintiff had the following severe impairments: status post cervical fusion, bulging disc at C3-C4, lumbar and cervical discogenic disease, cervical and

       lumbar degenerative disc disease, degenerative spondylosis, Diabetes Mellitus type II, hypertension and major depression.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart B, Appendix 1.

5. After careful consideration of the entire record, the ALJ found that Plaintiff had the residual functional capacity to perform less than the full range of light work defined in 20 CFR 404.1567 (b). Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently, sit for 6 hours in an 8-hour workday, stand and walk for 4 hours in an 8-hour workday. He can frequently climb ramps and stairs and crawl. He can occasionally stoop and crouch, and never climb ladders, scaffolds and ropes. He is also limited to jobs involving simple and repetitive tasks.

6. Plaintiff is unable to perform any past relevant work.

7. Plaintiff was born on August 20, 1964, and was 46 years old, which is defined as a younger individual, age 18-49, on the alleged disability onset date.

8. Plaintiff has at least a high school education and is able to communicate in English.

9. Transferability of jobs is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a

    finding that Plaintiff is "not disabled" whether or not Plaintiff has transferable job skills.

10.  Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

11.  Plaintiff has not been under a disability, as defined in the Social Security Act, from October 15, 2015 through the date of this decision.

The Appeals Council subsequently denied Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner, subject to review by this Court. (Tr. pp. 1-4).

Plaintiff objects the ALJ's final decision denying him disability benefits, alleging he failed to properly assess both his physical and mental Residual Functional Capacity ("RFC"). For purposes of this Opinion and Order, the Court focuses on the mental RFC, insofar as it finds it to be dispositive of this case. Plaintiff asserts that the ALJ disregarded the unrebutted medical conclusions given by Plaintiff's treating physician regarding Plaintiff's condition, and, thus, made his mental RFC findings without any medical support in the record. Conversely, the Commissioner asserts there is substantial evidence to support the ALJ's ultimate conclusion and his decision to afford little weight to the treating physician.

## STANDARD

To establish entitlement to disability benefits, the burden is on the claimant to prove disability within the meaning of the Social Security Act. See Bowen v. Yuckert, 482

U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied in making a final determination as to whether or not a claimant is disabled. 20 C.F.R. §§ 404.1520; see Bowen, 482 U.S. at 140-42; Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. §§ 404.1520(b). If not, the decision-maker proceeds to step two, where he or she must determine whether the claimant has a medically severe impairment or combination of impairments. See §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. §§ 404.1520(e).

Once the ALJ determines that the claimant cannot perform his or her former kind of work, then the fifth and final step of the process demands a determination of whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform any other work whatsoever. §§ 404.1520(f).

In the case at bar, the ALJ determined at step 5 that Plaintiff was not disabled and that there were jobs in the national economy that he could perform in view of his residual functional capacity, age, education, and past work experiences.

## LEGAL ANALYSIS

The Court's review in this type of case is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. See Manso-Pizarro v. Sec'y of Health and Human Servs, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999). Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), *quoting* Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The court will set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. See Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez v. Sec'y of Health and Human Servs, 647 F.2d 218, 222 (1st Cir. 1981).

Substantial evidence is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Gottier v. Colvin, No. 15-CV-355-SM, 2016 WL 4734402, at *1 (D.N.H. Sept. 12, 2016); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). It is therefore important to note that courts must give deference to the ALJ's interpretation of the medical record and although an ALJ is not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion, upon the existence of conflicts in the medical record from the report and sources, it is for the ALJ and not this Court to resolve them. See

Nguyen v. Chater, 172 F.3d at 31; Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127 (1st Cir. 1981) (the resolutions of conflicts in the evidence and the determination of the ultimate question of disability is for him [the ALJ], not for the doctors or for the courts); see also Rodríguez v. Sec'y of Health and Human Servs., 647 F.2d at 222. This court's review of the ALJ's decision is, therefore, both limited and deferential.

In the present case, Plaintiff's main argument is that the ALJ failed to give proper weight to Plaintiff's mental treating physician's reports and conclusions and thus, he erred in determining his mental residual functional capacity. The Court agrees. The ALJ decided to give the notes and opinion of Plaintiff's treating physician, Dr. Japhet Gaztambide Montes ("Dr. Gaztambide"), little or no weight, opining that the limitations Dr. Gaztambide found were not explained and were allegedly inconsistent with his own progress notes. (Tr. p. 38). The ALJ based this conclusion on the fact that Plaintiff's GAF[2] scores ranged between 50 and 60 (ranging from serious to more mild symptoms) and on two examinations by agency consulting physician Dr. Fernando Torres-Santiago ("Dr. Torres") which allegedly showed Plaintiff's symptoms not compatible with Dr. Gaztambide's conclusions. Because of this, the Commissioner avers that evidence in the

---

[2] The Global Assessment of Functioning (GAF) is a numeric scale (0 through 100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults, e.g., how well or adaptively one is meeting various problems-in-living. The score is often given as a range. Since 2013, the GAF is no longer used in the DSM-5. A score of 41-50 denotes serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work). A score of 51-60 denotes moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Defendant alleges that these GAF scores present mild to moderate symptoms. While that may be true for a GAF of 51-60, it is not the case for a GAF score of 41-50.

present record was sufficient for the ALJ to reach a conclusion of not disabled. The Court is unconvinced.

The Commissioner first contends that Dr. Gaztambide's mental Residual Functional Capacity Assessment ("RFCA") should not be considered because it applies from December 2012 through August 2013. Although correct, Dr. Gaztambide treated Plaintiff for several months past the August, 2013 RFC date, and his conclusions regarding Plaintiff's condition do not differ.

Generally, the ALJ gives more weight to medical opinions from a claimant's treating sources, because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments." 20 C.F.R. § 404.1527(d)(2). Regulations state that "the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source". 20 C.F.R. § 404.1527(c)(2)(i). The ALJ will therefore give controlling weight to the opinions of treating physicians if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. Berríos-Vélez v. Barnhart, 402 F. Supp. 2d 386, 391 (D.P.R. 2005). Generally, the more consistent an opinion is with the record as a whole, the more weight is given to it. 20 C.F.R. §

404.1527(c)(4); Bouvier v. Astrue, 923 F.Supp.2d 336, 347–48 (1st Cir. 2013) ; Agostini-Cisco v. Comm'r of Soc. Sec., 31 F. Supp. 3d 342, 348 (D.P.R. 2014).

Office treatment notes by Dr. Gaztambide from December, 2012 through August 2013, show Plaintiff well-groomed and cooperative, yet depressed and with cognitive difficulties in concentration, insight and judgment and with slow thought and speech. (Tr. pp. 471-480). Dr. Gaztambide gave Plaintiff GAF of 55 at the initial visit, a GAF of 50 four times, and a GAF of 60 once.

The RFCA performed by Dr. Gaztambide dated August 15, 2013 found Plaintiff extremely limited 6 out of 20 instances and markedly limited in 11 of 20. (Tr. p. 486-490). Dr. Gaztambide concluded that "the physical and mental symptoms cause clinically severe impairment in social occupational and other areas of functioning". (Tr. p. 490).

Post-RFCA assessment notes from visits to Dr. Gaztambide's office from September, 2013 through April 23, 2014 found Plaintiff with a GAF ranging from 51 to 55, and with depressed mood, sometimes retarded motor activity, and cognitive difficulties in attention, concentration and insight. (Tr. p. 503). These findings do not change over the time span Dr. Gaztambide saw Plaintiff in his office or after he issued the RFC. His findings are in line with the GAF scores.

The Commissioner then bases his argument on the fact that "Dr. Torres-Santiago provided two mental status examination (sic), already, as part of his comprehensive examinations…" and this provided the extra evidence on which the ALJ based his ultimate opinion. (Docket No. 23, p. 15). Yet, what Dr. Torres performed was an "Internist Cardiovascular Examination" in June, 2012 and an "Internist Evaluation" in June, 2013.

The only mental component of these examinations seems to be where the doctor gathered the relevant medical history directly from Plaintiff. In 2012, the report stated "[h]e denies mental illness or memory problems", and in 2013, the report stated "[h]e referred being depressed after employment loss". Dr. Torres performed a number of physical tests on Plaintiff, including range of motion, gait, and hand function, and provided details as to the different tests performed and the results. (Tr. p. 442-451 and 458-467). Markedly absent from the record are any mental tests performed by Dr. Torres. Therefore, it seems that Dr. Torres did not perform these mental tests on Plaintiff.[3] Consequently, Plaintiff's mental record only has Dr. Gaztambide's notes and findings (which the ALJ gave little or no weight to) and the ALJ's personal assessment of Plaintiff's testimony and demeanor at the hearing.[4] Furthermore, the consulting agency physicians, who only reviewed the record in this case and did not examine Plaintiff, deserve less weight, as they also had no evidence upon which to make a finding of not impaired. Bouvier v. Astrue, 923 F. Supp. 2d 336, 347 (D.R.I. 2013) ("All things being equal, however, a treating doctor's report may be entitled to 'greater' weight than an inconsistent non-treating source."). Therefore, when the Commissioner states that the ALJ had sufficient evidence from which to conclude Plaintiff was not disabled, the ALJ really only had his own assessment of Plaintiff's demeanor and testimony at the hearing to buttress his conclusion.

---

[3] The agency consulting physicians review of the record likewise listed Dr. Torres' examination of Plaintiff under the label of "physical", not "mental". Tr. p. 220.

[4] Interestingly, D. Torres concluded both his evaluations saying Plaintiff " was unable to do regular work". Tr. pp. 445 & 461. Although the ALJ gives weight to Dr. Torres' examination and attempts to use it it to bolster his ultimate conclusion that Plaintiff is not disabled, he does not accept the Dr. Torres' conclusion that Plaintiff cannot work.

It has been well established that an ALJ is "not qualified to interpret raw medical data in functional terms" and an ALJ's RFC assessment cannot stand when "no medical opinion support[s] the determination." Nguyen v. Chater, 172 F.3d at 35 (ALJ was not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion); Rose v. Shalala, 34 F.3d 13, 18 (1st Cir.1994). The ALJ's personal perception of Plaintiff's capacities, alone, is insufficient evidence in which to base a conclusive finding, more so because the ALJ is a lay person and, therefore, not qualified to make these kinds of determinations without evidentiary medical support. Thus, the ALJ was ill-equipped to conclude, as he did in this case, that Plaintiff was not disabled when he did not consider the only medical opinion backing up that conclusion on the record.

It is important to remember that a social security claimant need not be completely disabled from all activities, *per se*, in order to be found disabled for purpose of Social Security benefits. See, *e.g.*, Balsamo v. Chater, 142 F.3d 75, 81–82 (2d Cir.1998); Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir.1996); Smith v. Califano, 637 F.2d 968, 971 (3d Cir.1981). A claimant need not be an invalid to be disabled for purposes of social security benefits, and activities in pursuit of important goals such as household tasks, done while enduring pain, do not necessarily undermine a finding of disability. Balsamo, 142 F.3d at 81; Rallis v. Barnhart, No. CIV. 01-303, 2002 WL 482565, at *6 (D.N.H. Mar. 29, 2002). Therefore, the ALJ's findings that Plaintiff's concentration was unimpaired during the hearing and that he could he could talk on the phone, among others, are not dispositive of this issue and certainly cannot, by themselves, be considered substantial evidence in which to base a disability decision on.

Although it has been well established that the record may support more than one conclusion, the Court must uphold the Secretary "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Ortíz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (*quoting* Rodríguez, 647 F.2d at 222); see also, Richardson v. Perales, 402 U.S. at 401. Where the facts permit diverse inferences, the Court must affirm the Secretary even if we might have reached a different result. Rodríguez Pagán v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Lizotte, 654 F.2d at 128. But where, as here, the ultimate conclusion is unsupported by substantial evidence in the record as a whole, the Court must reverse the Commissioner's conclusion. The record contains no evidence of Plaintiff's mental capacity except the treating physician's treatment notes, which the ALJ refused to give any weight to, thus rendering the record hollow in this area. The ALJ's personal perception of Plaintiff at the hearing is insufficient to base a final capacity determination.

In light of the above, the Court finds that the ultimate conclusion of not disabled is not supported by substantial evidence in the record as a whole.

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge finds that substantial evidence does not support of the Commissioner's decision in the present case. Therefore, the Commissioner's decision is VACATED, and this case REMANDED for further proceedings consistent with this opinion.

Judgment is to be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 20th day of June, 2017.

        S/CAMILLE L. VELEZ-RIVE
        CAMILLE L. VELEZ RIVE
        UNITED STATES MAGISTRATE JUDGE